FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
DEC 28 2018

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

|  |  |
|---|---|
|  | Civil Action No. 1:18-cv-00854 LF/KBM |
| State of New Mexico ex rel. Hector Banderas, Attorney General, | **RESPONSIVE PLEADINGS** of the defendant Tiny Lab Productions |
| v. |  |
| Tiny Lab Productions; Twitter Inc.; MoPub Inc.; Google Inc.; AdMob Inc.; Aerserv LLC.; InMobi PTE Ltd.; Applovin Corporation; Ironsource USA, Inc. | 13th December 2018 |

1. On 21st November 2018 Tiny Lab Productions ("**the Defendant**") has received a complaint with demand for jury trial filed by State of New Mexico represented by Attorney General Hector Banderas ("**the Plaintiff**"). The State claims that the Defendant together with Twitter Inc.; MoPub Inc.; Google Inc.; AdMob Inc.; Aerserv LLC.; InMobi PTE Ltd.; Applovin Corporation; Ironsource USA, Inc. (collectively "**the SDK Defendants**") has infringed the rights of the children of State of New Mexico and in such way the Defendant has violated Children's Online Privacy Protection Act ("**COPPA**") and other laws of the State.

2. The summons which were served together with the complaint stated that the Defendant has to provide a responsive pleadings to the State's complaint within 21 days from receiving the summons. However according to Rule 12 (a)(1)-(A)(ii) of Federal Rules of Civil Procedure ("**FRCP**") the time for serving a responsive pleading is within 90 days after it was sent to the defendant outside any judicial district of the United States. In this case the Defendant is an entity established in Lithuania, Europe - that is outside any judicial district of the United States. The summons received by the Defendant was signed and send out by the court on 21st September 2018.

3. The Defendant does not agree with the accusations that the Plaintiff has submitted and within the applicable time frame for providing it's response to the claim, the Defendant serves this responsive pleading in which it express its non conformity with the accusations of the Plaintiff's claim. The Defendant believes that the Plaintiff has accused it of violations which was not omitted and that the claims of the Plaintiff are false and based on the facts which were misleadingly interpreted.

   **I.   Regarding Jurisdiction**

4. The Plaintiff stated in its claim that the United States District Court District of New Mexico has subject matter jurisdiction over this action as well as personal jurisdiction over each defendant, because each defendant engages in consumer transactions within the State of

New Mexico, purposefully directs and/or directed its actions towards the State of New Mexico, tracks children by siphoning geolocation, persistent identifiers and/or has the requisite minimum contacts within the State of New Mexico needed to permit this court to exercise jurisdiction.

5. The Defendant does not agree with the Plaintiff's position regarding personal jurisdiction over the Defendant and in accordance to Rule 12(b) of the Federal Rules of Civil Procedure stating that a party may assert a defense regarding lack of personal jurisdiction (Rule 12(b)-(2)) by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

6. New Mexico Statutes Chapter 38 Section 38-1-16 (A) provides a specified list of actions which when performed shall be considered as submitting himself or his personal representative to the jurisdiction of the courts of this state. However, in this case the Defendant does not have the requisite minimum contacts within the State of New Mexico because: (a) the Defendant is a limited liability company incorporated in Lithuania and its only principal place of business is in Lithuania; (b) the Defendant does not have any subsidiaries, establishments, representatives, managers or agents within the State of New Mexico or any other State of the United States; (c) the Defendant has never intended to do any business transactions in the State of New Mexico; (d) the Plaintiff have not provided a single evidence proving that at least a single person in the State of New Mexico has been actually or potentially harmed by the Defendant; (e) the Plaintiff's claim is of theoretical nature and based only on an assumption that children of the State of New Mexico had been downloading and playing apps developed by the Defendant, however such assumption is not backed by any real facts or statistics of actual children that could have been downloading or playing the games developed by the Defendant; (f) the Defendant does not have any other ties linked to the State of New Mexico or any other State of United States.

7. Though the Defendant understands that in accordance to 15 U.S.C. Section 6504(a) the attorney general of a State may bring a civil action on behalf of the residents of the State in a district court of the United States of appropriate jurisdiction, however in the light of the facts specified above the Plaintiff did not provide enough evidence to prove that the Court in this case has personal jurisdiction over the Defendant.

8. The Defendant believes that the issues raised by the Plaintiff has more of a theoretical substance than actual material grounds for a court case and the arguments that the Plaintiff provided does not presuppose enough ties between the Defendant and the people of the State of New Mexico.

9. Also, in this case the Court does not have a general jurisdiction over the Defendant as well, as the Supreme Court of United States has announced in a case Daimler AG v. Bauman (Case No. 11-695) that in order for a foreign defendant to be subject to general jurisdiction, it must not only possess continuous and systematic contacts with a forum state, but those contacts must also surpass some unspecified level when viewed in comparison to the company's 'nationwide and worldwide' activities.

10. With regards to the above give, the Defendant state that in his opinion the Court has neither personal, nor general jurisdiction over the Defendant in this case. However, if the Court would decide differently the Defendant would like to draw the attention of the parties to important circumstances specified further in this response.

## II. General arguments

11. The Defendant is a small entity incorporated under the laws of Lithuanian Republic under the name of UAB "Invenis", company code 302813482, registered address Studentų str. 67, Kaunas, Lithuania, which designs gaming apps for smartphones and tablets that are distributed via Google operated app store ("**Google Play**").

12. The Defendant started developing gaming apps when they noticed that there is a lack of gaming apps that would be suitable for small children to play together with their parents. The Defendant developed gaming apps with the purpose in mind to involve the whole family in the process of playing a game, as the Defendant's CEO thought that the main problem with mobile games and other digital content in the modern day world is that parents often simply turn on any game or video and gave their children their mobile devices so they focused their attention on the content shown on the device but losing the attention of their parents. The Defendant's vision was to create games that would invite to take a closer look at the content their children reach and encourage their parents to play together.

13. The Defendant created various segments of games interesting for various age groups – from toddlers, kids or teenagers to their parents or even grandparents. For example mini games (puzzles, matching patterns, etc.) – even though was orientated to children more, but eventually became popular between adults; racing and transportation games were popular among all age groups, however some aspects of the game were more appealing to teenagers (decoration and designing of vehicles), others to adult players (competing for higher score), while the game remained interesting for younger players as well. The latest development which was developed by the Defendant was a tournament mode in most of its games, which would have been allowed to compete the players against each other – playing in such tournament would be a lot more complex than playing in regular mode and would have required a certain degree of skills which would be too hard to obtain for the younger audience. In these ways the Defendant was constantly producing games which would engage adults to play the game, improve their gaming skills not only for the pleasure of gaming but also for becoming heroes of their children and unlocking more and more content for their children. Meanwhile, the children could play their chosen segment of the game and creating new tasks or missions for their parents or grandparents. The Defendant thought that involvement of the whole family in the gaming process would actually solve the problem with "games for families" category, as their games are intended to actually invite all members of the family to play together and not just distract parents from children. This idea that *games for families* should not be used as games *instead family* was constantly reminding the Defendant and its team that they are creating games for the whole family to play.

3

14. The Defendant used to publish its games via Google Play market place where most of the games were listed as designed for both children under the age of 13 as well as teens or adults. Accordingly, with regards to the design, gameplay and other properties of the games, Google accepted the Defendant's games into the Designed for Families program, which is created in order to provide the developers with the ability to promote apps that is designed for kids and family audiences in the Google Play store. The Defendant had no doubts about the fact that their games are primarily family orientated, because according to Google Play Terms of Service[1] in order to use Google Play or to create Google Play account a person must be at least 13 years of age or older. Younger users are not allowed to have an account, unless their parents would create one by using a "Family Link" account. Using a "Family Link" account the parents has full control of the content that the child may access in the Google Play store, in such case a child would not be automatically allowed to download any app from Designed for Families program.

15. Knowing the above given facts the Defendant was positive that listing their games as designed for mixed audience would make them more accessible for the parents rather than the children. However, still having in mind that the parents may download gaming apps to their own personal devices in order for the child to play or that the parents may give their devices to children without logouting from their Google Play accounts first, the Defendant implemented additional measures in order to sort users which are younger than 13 years old.

16. When a user downloaded one of the Defendants apps, he/she is required to provide its age via age screening interface ("**Age gate**"). If a user marked that he/she is younger than 13 years old, the Defendant would act accordingly and would not allow any of the users personal information be transferred to any SDK Defendant or any other third party. Providing age information would not affect the users gameplay in any way, so the users under age of 13 years or their parents did not have any motive or cause to lie about their true age.

17. The Defendant implemented the Age gate after close inspection of the Federal Trade Commission's FAQ[2] section regarding age screening the users of child directed apps, which does not target children as their primary audience. Also the Defendant had investigated the industry practices and measures applied by the biggest gaming industry companies.

18. If the user identified as being under age of 13 years old, the Defendant's apps would not allow any SDK Defendants to connect or communicate with the app in order to receive information of the user, however those SDK Defendants which were specifically child directed, was allowed to show their advertisements designed for children but without receiving any data from the user. If the user identified as being 13 years or older, the

---

[1] https://www.google.com/mobile/android/market-tos.html; https://play.google.com/about/play-terms/index.html
[2] https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions#Web%20sites%20and%20online

Defendant's apps would allow to connect and exchange information with those SDK Defendants whose adversarial content was suitable for children and families.

19. All SDK Defendants whose SDK plugins were used for marketing in the app was listed and specified in the app's privacy policy which was displayed for the user prior downloading the app in the app download profile and also accessible at any time in the app itself. The Defendant only worked with such SDK operators which confirmed their compliance with COPPA requirements and Google's Designed for Families program.

### III. Regarding COPPA requirements for designating a game as child directed

20. Contrary to the Plaintiff's position set out in the claim, the Defendant does not collect personal information of children under 13 years old and does not allow SDK Defendants to use any personal information trackers which would collect any personal information from users which are identified as younger than 13 years old.

21. Section 312.3 of COPPA state that it shall unlawful for any operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed under this part.

22. Federal Trade Commission ("**FTC**") has explained implication of COPPA requirements in more detail in an official six-step compliance plan for businesses[3]. According to FTC's six-step guide COPPA doesn't apply to everyone operating a service or other online service and in order to determine whether COPPA applies to a particular business, one should look at how COPPA defines some key terms, such as "website or online service", "directed to children under 13", "personal information", "collect".

23. A variety of factors has to be taken into account to see if a site or service is directed to children under 13, including the subject matter of the site or service, visual and audio content, the use of animated characters or other child-oriented activities and incentives, the age of models, the presence of child celebrities or celebrities who appeal to kids, ads on the site or service that are directed to children, and other reliable evidence about the age of the actual or intended audience. According to FTC, if a website or service doesn't target children as its primary audience, but is "directed to children under 13" based on those factors, then one may choose to apply COPPA protections only to users under age 13. In such case, the site/service operator must not collect personal information from any users without first collecting age information.

---

[3] https://www.ftc.gov/tips-advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance

24. In another FTC tutorial "A Guide for Business and Parents and Small Entity Compliance Guide"[4] ("**the Guide**") FTC outlined in section D (1) that COPPA sets out a number of factors for determining whether a website or inline service is directed to children.

25. Section D (2) of the Guide also states that when someone runs a child directed app various factors apply when determining whether such app operator may screen users by using age gates in order to determine to which users COPPA rule applies and to which not. The Guide states that COPPA provides for a narrow exception for a site or service that may be directed to children, but that does not target children as its primary audience. For instance, a child-directed site may target children under age 13, as well as parents or younger teens. An operator of a site or service meeting this standard may age-screen its users if it: (1) does not collect personal information from any visitor prior to collecting age information, and (2) prevents the collection, use, or disclosure of personal information from visitors who identify themselves as under age 13 without first complying with notice and parental consent provisions established by COPPA.

26. Section 312.2 of 16 C.F.R. provides a definition of *web site or online service directed to children*, paragraph (3) of the latter definition state that A web site or online service that is directed to children under the criteria set forth in paragraph (1) of this definition, but that does not target children as its primary audience, shall not be deemed directed to children if it: (i) Does not collect personal information from any visitor prior to collecting age information; and (ii) Prevents the collection, use, or disclosure of personal information from visitors who identify themselves as under age 13 without first complying with the notice and parental consent provisions of this part.

27. With regards to everything noted above in this response the Defendant would like to draw attention to the following facts which were taken into consideration when the Defendant was determining if it is appropriate to use Age gate in its apps:

    a. The Defendant's apps are used and enjoyed by users in all age categories, since the games offer graphics and gameplay content which is appealing to children and their parents or older siblings as well as minor children. Vast majority of the games developed by Defendant are various racing games, which differs in terms of the type of vehicles the user may choose and the environments in which the gameplay happens. The Defendant's developed games does not include any characters which would be specifically known or recognizable by children – game elements and characters varies from monster trucks, motorcycles, skaters, pirates to zombies or World War II themed tanks. Obviously many of these gameplay elements were not only unknown to minor children under 13 years old, but even not interesting;

    b. It is not correct to imply that the game is directed and/or targeted to children under 13 years old based on the name, animations or gameplay characters used in the game. The most popular gaming apps on Google Play store, such as Super Mario

---

[4] https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions#Web%20sites%20and%20online

6

Run[5], Subway Surfers[6], Pokemon GO[7], Candy Crush Saga[8], all rated as suitable for users above 3 years old, however are mainly played by the age group of users between 18-25 years old[9]. For that matter, a highly important aspect of a gaming app to determine for what age it is specified (targeted/directed) is by looking at what gameplay development possibilities for the user it allows – does the game requires the user to gain additional skills in order to achieve rewards. In this case the Defendant's games such as Fun Kid Racing and others offered numerous possibilities of player gaming skills development which was needed if the user wanted to achieve in-game rewards, bonus levels, additional characters etc.

c. Google does not allow users which are younger than 13 years to obtain individual accounts for Google Play store. Also, Google has control over both - Google Play and AdMob platforms. Which means that Google has access to information regarding Google Play users; apps; advertisements which are shown when the apps are played; personal information which is received from an app with AdMob SDK plugin activated. With regards to Google Play store Terms of Use applicable to users and the fact that Google has significant statistics regarding its users the Defendant had no reasonable ground to consider that his apps, accepted by Google as Designed for Families, should be considered as directed and targeted solely towards children under 13 years old.

28. With regards to the above given facts and in relation to Section 312.2 of 16 C.F.R. the Defendant had and still has a firm belief that the gaming apps that he has developed and distributed via Google Play store platform is designed and suitable for mixed audience of all ages, not just children under 13 years old. Thus using Age gate for segmenting its user audience should be held compatible with the provisions of COPPA as no personal information was collected or transferred to third parties if a user indicated his age being below 13 years old.

29. Also, Part 4 of Sections 312.2 of 16 C.F.R definition of *web site or online service directed to children* outlines that a web site or online service shall not be deemed directed to children solely because it refers or links to a commercial web site or online service directed to children. Accordingly, the Defendant's apps should not be deemed as directed to children solely based on various statements expressed in marketing materials (web sites). While in this case the Plaintiff does not analyze any gameplay or game contents when determining whether the apps were designed for various age groups, but made a conclusion that the apps were directed to children based only on marketing information stating that such games may be played by young audience or that the children loves playing these games.

---

[5] https://play.google.com/store/apps/details?id=com.nintendo.zara
[6] https://play.google.com/store/apps/details?id=com.kiloo.subwaysurf
[7] https://play.google.com/store/apps/details?id=com.nianticlabs.pokemongo
[8] https://play.google.com/store/apps/details?id=com.king.candycrushsaga
[9] https://techcrunch.com/2016/12/22/super-mario-runs-buying-population-is-already-declining/;
http://www.businessofapps.com/data/pokemon-go-statistics/
https://www.engadget.com/2011/09/08/younger-audiences-play-more-freemium-games-but-25-34-year-olds/

7

30. The Plaintiff also made misleading interpretations of the Defendant's target audience relying only on a press article[10] which was cited in the Plaintiff's claim with no context whatsoever. In the given article published on year 2016 the Defendant's CEO was asked to comment on how kids and toddlers audience differs from others in terms of business development. Contrary to Plaintiff's interpretation, the Defendant's CEO did not lamented the difficulties of monetizing children, but simply shared his thoughts about two most challenging aspects that children orientated app industry faces. The views and ideas expressed in that article did not represent or explained anything about the Defendant's business model or monetization strategy. As the Defendant use children orientated games to target families (including users which are way over 13 years old) and the Plaintiff's interpretation of the mentioned article is misleading and unsound.

### IV.   Regarding the Age gate form and use

31. Due to the fact that the Defendant's apps were directed and targeted to mixed audience of users, the Defendant were relying on FTC's Guide when determining whether he should use an Age gate to screen its users and what form of age screening Age gate should be used.

32. Section G (2) of the Guide stated that in circumstances where children are not the primary audience of your child-directed service, the amended Rule allows you to employ an age screen in order to provide COPPA's protections to only those visitors who indicate they are under age 13. Note that sites or services directed to children cannot use the age screen to block children under age 13. See FAQ D.2 above. Once you identify child visitors, you may choose to: 1) Collect parents' online contact information to provide direct notice in order to obtain parents' consent to your information collection, use and disclosure practices; or 2) Direct child visitors to content that does not involve the collection, use, or disclosure of personal information.

33. Section G (3) of the Guide emphasized that if you choose to block children under 13 on your general audience site or service, you should take care to design your age screen in a manner that does not encourage children to falsify their ages to gain access to your site or service. Ask age information in a neutral manner at the point at which you invite visitors to provide personal information or to create a user ID. According to FTC, in designing a neutral age-screening mechanism, you should consider: 1) Making sure the data entry point allows users to enter their age accurately. An example of a neutral age-screen would be a system that allows a user freely to enter month, day, and year of birth. A site that includes a drop-down menu that only permits users to enter birth years making them 13 or older, would not be considered a neutral age-screening mechanism since children cannot enter their correct ages on that site; 2) Avoiding encouraging children to falsify their age information, for example, by stating that visitors under 13 cannot participate or should ask their parents before participating. In addition, simply including a check box stating, "I am over 12 years old" would not be considered a neutral age-screening mechanism.

---

[10] https://www.startuplithuania.com/news/tiny-lab-productions-subscription-model-sounds-promising/

8

34. As mentioned previously, the Defendant had age screening function installed in every gaming app available on Google Play store and did not collect or allow any of the SDK Defendants to collect any personal information of any users who indicated their age as being lower than 13 years.

35. Though the Plaintiff claims that the Age gate used in the Defendant's apps does not qualify as "neutral" and encourage children to enter an age over 13 (Section 101 of the Claim) – the Defendant does not agree with such interpretation. Contrary to the Plaintiff's arguments, the Age gate used by the Defendant is fully compliant with the guidelines set by the FTC.

36. Firstly, the Defendant's used Age gate form allowed the users to enter their year of birth correctly and without any limitations of entering a year which would deem the user as being younger than 13 years old.

37. Secondly, the users were not encouraged to lie about their age in anyway - no statements regarding any possible limitations or additional procedures applicable for users younger than 13 years old were made. In fact, the contents of the game remained identical regardless of the age indicated by the user, so the users had no logical motive to provide false information.

38. Thirdly, the Plaintiff claim that the Age gate is not "neutral" because the Age gate, once opened for the first time, defaults to a birth year between 2000 and 2001, so it takes a minimum of 6 taps plus the "OK" button to specify an age under 13. The Defendant founds these arguments unsound. All apps developed by the Defendant were designed for touchscreen devices only (smartphones, tablets), which means that taping on the screen in order to operate the game on the device is an absolute necessity. For example if a user wants to start using the app on his device he must perform a series of "taps" prior even initiating the app to be started. Thus, if a user is able to download and initiate the app to be started on his device it would be unwise to think that such user use the device by tapping its screen uncomprehendingly, mistakenly, randomly and/or impatiently. Also, every gameplay of any app developed by the Defendant requires accurate tapping on the screen, since the game controls are based on controlling the game via "screen tapping". Accordingly, the Defendant believes that if a user is capable of using the touchscreen device in general, such user should not find it too complicated to make at least six or seven taps when starting the app. Also, choosing the right year on the Age gate does not even require tapping at all, as a user can also slide the age marker from one side to another which allows the user to choose its age by a single swipe and one tap on the screen.

39. On the other hand, as mentioned in Section 27 (c) of this Response, Google does not allow any users under age of 13 to use Google Play store on their own. Also, the Defendant believes that Google Play store's interface is way too complicated for a toddler or a child of a very young age to operate on its own. So in most cases, when the gaming app is downloaded with the intention to hand over the device for playing to a child, usually the downloading and setting up is carried out by an adult or an older sibling. Thus, the Age gate which requires to simply choose the birth year of the game user by taping the slide

9

marker a few times, should not be considered as too complicated or not "neutral". Obviously, if a user has enough skills to operate an Android OS driven portable device, such user would not experience any trouble when selecting age on the Age gate system used by the Defendant.

40. Also, the Defendant would like to emphasize that screening users age by an Age gate similar to the one that the Defendant used are an industry norm in child directed apps. For example, a very popular animated gaming app directed at children and adults of all age groups - "My Talking Tom"[11] - was downloaded more than 500'000'000 times from Google Play store and has an age gate very similar to the one used by the Defendant (see ex. 1 below). Another popular game – Disney's "Cars: Lighting League"[12] is an animated racing game for mixed audiences, which was downloaded from Google Play store for more than 10'000'000 times, also use an age screening gate which requires the user to slide a small dot in line until it reaches the needed number (see ex. 2 below). Just like Disney's game, the Age gate on the Defendant's apps may also be controlled by swiping.

 

Ex. 1        Ex. 2

---

[11] https://play.google.com/store/apps/details?id=com.outfit7.mytalkingtomfree
[12] https://play.google.com/store/apps/details?id=com.disney.cars3_goo

10

41. With regards to the arguments presented above, the Defendant does not agree with the Plaintiff's position regarding the compliance of the Age gate with COPPA requirements and firmly believe that the Age gate used by the Defendant is "neutral", does not encourage the users to lie about their true age, meets best industry practices and is fully compliant with COPPA.

### V.     Regarding the Defendant's role in collection of personal data

42. The Plaintiff state that the Defendants collected children personal information in a privacy invasive manner and used children personal data to serve them targeted advertising. Basically the Plaintiff claim that the Defendants knew that the apps were played by children under 13 years old and intended to show such advertisements which would be directed to a particular child playing the game. The Defendant would like to emphasize that he does not agree with such Plaintiff's position.

43. Since the Defendant's apps were designed to appeal for audiences of various age groups the Defendant requested each of its user to specify their birth date, as described in Section IV of this response. The age of the user basically was the only information which the Defendant collected in order to safely group and segment the users in categories below and above 13 years old. If a user indicated being younger than 13 years old, the Defendant would not allow any SDK plugins to be activated while such user was playing the game. Accordingly no personal information about such users were collected or transmitted to any SDK Defendant or any other third party.

44. If a user indicated his age as being above 13 years old, then the Defendant would allow to activate such SDK plugins, which were operated by SDK Defendants which confirmed to be COPPA compliant and providing advertising content suitable for families (all age groups). However, even in such case, the Defendant would not collect, store or use any personal information whatsoever – all collecting and usage of personal data was done by SDK Defendants without any additional interference of the Defendant.

45. As all data to SDK Defendants were transmitted coded and via SDK plugins, the Defendant had no access to such data and could not have used it in any way. Accordingly the Defendant had no technical means or access to data which would allow the Defendant to spot such users which were younger than 13 years old but have provided false information about their age. However, the Plaintiff claims that the SDK Defendants knew that they were receiving children data and accordingly displayed advertisements directed to under aged children.

46. If the above described statements would turn out to be true, that is, if the SDK Defendants depending on the information received via SDK plugins could have gained actual knowledge about the user being younger than 13 years old, then the SDK Defendants should have acted accordingly and stopped collection of such users personal information as well as inform the Defendant about such findings. However, since the Defendant was not collecting any personal information by itself, the Defendant had no ability to gain actual

knowledge about the user's true age, when the user or its parent gave false information about their age via Age gate.

47. As mentioned previously, Google does not allow children younger than 13 years to set up personal accounts in Google Play store and the Defendant took additional measures to make sure that even those users who downloaded their apps by using account that did not belong to them would not be tracked by SDK Defendants if such user's age was below 13 years. The Defendant believes that the measures that he has taken was sufficient enough to make sure than no tracking of children were allowed by using the Defendant's apps.

48. As described by FTC[13], COPPA applies to companies that runs ad network plug-ins and have actual knowledge that they collect personal information from users of a website or service directed to children under 13. The Defendant would like to emphasize that SDK Defendant Google controls a lot more information than the Defendant or any other SDK Defendant, which would allow to identify a user as being under aged, despite falsely indicating its age. Google has control over admission of all apps published in Google Play store; Google controls the attribution of a specific app as suitable for families or children in the Google Play store; Google controls the SDK Defendant AdMob Inc., which is the one of the biggest SDK marketing company in the world and whose SDK plug-ins were active in the apps developed by the Defendant. By having so much information about the users of apps, as well as having close ties with app developers whose apps are published on Google Play store, Google, more than anyone else, had the measures to gain actual knowledge about the age of users, regardless of what information a user provided on Age gate. However, the Defendant had not received any warnings or information from Google about the fact that any of the Defendant's apps users were under aged.

49. With regards to the above, the Defendant would like to note that they never had any intention to track children and took all reasonable measures that was in their power to prevent under aged users from unlawful collection of their personal information. Respectively, even if the Court would determine that the Defendants violated COPPA requirements, the Defendant does not agree with the Plaintiff's statements that the Defendant performed any COPPA violations willfully, in unfair or deceptive manner.

## VI.   Regarding claims for relief

50. The Defendant shortly repeats that he does not agree with the Plaintiff's claims for damages, restitution or other compensation because:
    a. The Defendant developed gaming apps designed for families and used by mixed audience;
    b. The Defendant used age screening features (Age gate) towards all of its users to segment users below or above age 13;
    c. Age screening features used by the Defendant are compliant and does not violate any of COPPA requirements;

---

[13] https://www.ftc.gov/tips-advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance

12

    d. The Defendant did not collect any personal information and did not allow any third parties to collect personal information whenever the Defendant had actual knowledge about user's age being less than 13 years;

    e. The Defendant had never had any intention to violate COPPA requirements and acted in accordance to FTC's guides, which were specifying and explaining COPPA regulations;

    f. The Plaintiff did not provide any evidence proving than any New Mexico children actually used the Defendant's apps;

51. Though the Defendant believe that it did not commit any of the violations that the Plaintiff has accused of, however the Defendant agree that children privacy is an important issue and should not be treated lightly. Accordingly, the Defendant is willing to accept and benevolently perform any resolution or settlement that would be enjoining the practice and require specific actions for compliance with COPPA.

52. Therefore, the Defendant kindly and respectfully request the Court to dismiss the Plaintiff's claim towards the Defendant.

Respectfully,
Tiny Lab Productions (UAB "Invenis")
CEO Jonas Abromaitis

TINY LAB PRODUCTIONS ("UAB,, INVENIS")
VYTAUTO PR. 23, 3RD FLOOR,
LT- 44352, KAUNAS
LITHUANIA



BC
12/27



RECEIVED
At Albuquerque NM
DEC 28 2018
CLERK

US DISTRICT COURT
DISTRICT OF NEW MEXICO
PETE V. DOMENICI U.S. COURT
333 LOMAS BLVD NW, SUITE
ALBUQUERQUE, NM 87102
UNITED STATES