UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *EX REL.*
HECTOR BALDERAS, ATTORNEY
GENERAL,

    Plaintiff,

v.                                                                         No. CIV 18-854 MV/JFR

TINY LAB PRODUCTIONS; TWITTER
INC.; MOPUB, INC.; GOOGLE, INC.;
ADMOB, INC.; AERSERV LLC;
INMOBI PTE LTD.; APPLOVIN
CORPORATION; and
IRONSOURCE USA, INC.

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Twitter and MoPub's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 46], Defendant Applovin's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 48], and Defendant Inmobi and AerServ's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 49] (collectively, the "Motions to Dismiss for Lack of Personal Jurisdiction"). The Court, having considered the Motions and relevant law, finds that the Motions are not well-taken and will be denied.

## BACKGROUND

The relevant facts, as alleged in the Complaint and demonstrated by the Defendants' affidavits, are as follows. Tiny Lab Productions is a developer of child-directed, mobile game applications ("apps"), including Fun Kid Racing, Candy Land Racing, Baby Toilet Race: Cleanup Fun, and GummyBear and Friends Speed Racing. Compl. ¶ 3. During the relevant time

1

period, Tiny Lab's apps were available for download in the Google Play Store, operated by Google. *Id.* ¶ 12. Tiny Lab is headquartered in Lithuania. *Id.* Google is headquartered in California. *Id.* ¶ 15.

Twitter, MoPub, Inc., AdMob, Inc., AerServ LLC, InMobi Pte Ltd., Applovin, Corporation, and ironSource USA (collectively, the "SDK Defendants") are advertising companies that sold their proprietary software development kits ("SDKs") to Tiny Labs for installation and use in its gaming apps. *Id.* ¶ 13. The SDKs knew that these Tiny Lab gaming apps were directed to children. *Id.* ¶ 212. All of the SDK Defendants are headquartered in California. *Id.* ¶¶ 14-18.

When a Tiny Lab app is downloaded onto a child's device in New Mexico, the SDK Defendants' SDKs are also installed as app components. *Id.* ¶ 5. Once so embedded, while a child in New Mexico plays one of the apps, the SDK Defendants' SDK collects personal information about that child and tracks the child's online behavior to profile the child for targeted advertising. *Id.* ¶¶ 43-46. This happens without the knowledge or consent of the child's parents. *Id.* ¶ 44.

Specifically, as soon as a child in New Mexico opens up a Tiny Lab app on her device and it connects to the internet, the app connects to servers, including the SDK Defendants' servers. *Id.* ¶ 55. The SDK Defendants' embedded SDKs then begin sending data about the child to the SDK Defendants' respective servers. *Id.* As the child plays the app, the SDKs continue to communicate with the SDK Defendants' servers, sending requests, or "calls" to their servers for advertisements targeted to the child playing the app. *Id.* ¶ 56. With each request from the embedded software, the child's personal information is transmitted to the SDK

2

Defendants' servers, including her location in New Mexico. *Id.* The SDK servers store and analyze that information to enable continued tracking of the child. *Id.*

Based on these alleged facts, the State of New Mexico (the "State") commenced the instant action in this Court, asserting a federal statutory claim against all Defendants (Tiny Labs, Google, and the SDK Defendants) for violation of the Children's Online Privacy Protection Act ("COPPA"), along with a state statutory claim against all Defendants for violations of the New Mexico Unfair Practices Act, a state statutory claim against Google for additional violations of the New Mexico Unfair Practices Act, and a state common law claim against all Defendants for intrusion upon seclusion. *Id.* ¶¶ 207-248.

Thereafter, some of the SDK Defendants, namely, Twitter, MoPub, AppLovin, AerServ, and InMobi (collectively, the "Personal Jurisdiction ('PJ') Defendants") filed the instant Motions to Dismiss for Lack of Jurisdiction. The State filed one "Omnibus Opposition" to PJ Defendants' Motions to Dismiss for Lack of Jurisdiction [Doc. 64], and PJ Defendants filed one "Consolidated Reply" [Doc. 72].

## STANDARD

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, "there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendants' affidavits." *Id.* Further, "[i]f the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by

3

the moving party." *Id.* The court's "task is to determine whether the plaintiff's allegations, as supported by affidavits, make a prima facie showing of personal jurisdiction." *Id.*

**DISCUSSION**

In their Motions to Dismiss for Lack of Jurisdiction, PJ Defendants argue that this Court has neither general nor specific jurisdiction over them, and that the Court thus must dismiss the instant action as against them for lack of personal jurisdiction. In its Omnibus Opposition, the State argues that PJ Defendants apply the wrong standard in their Motions, because in this case, jurisdiction can be invoked based on nationwide service of process, rather than under "the minimum contacts analysis spelled out in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)." *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015). As set forth herein, the Court agrees with the State as to the appropriate test for determining whether jurisdiction exists over PJ Defendants, and finds that, under this test as it has been articulated by the Tenth Circuit, the State has made a prima facie showing of personal jurisdiction.

*The Two-Part Personal Jurisdiction Test*

The personal jurisdiction test "begins with two questions." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). First, the court asks "whether any applicable statute authorizes the service of process on defendants." *Id.* Second, the court "examines whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Id.*

*COPPA as the Basis for Nationwide Service of Process*

Here, the applicable statute, COPPA, provides that "[i]n any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by the engagement of any person in a practice that violates any

regulation of the [Federal Trade] Commission prescribed under [COPPA], the State, as parens patriae, may bring a civil action on behalf of the residents of the State in a district court of the United States of appropriate jurisdiction." 15 U.S.C. § 6504(a)(1). The statute further provides that, in any action brought under § 6504(a), "process may be served in any district in which the defendant" is either "an inhabitant" or "may be found." 15 U.S.C. § 6504(e)(2). There can be "no question" that the language of § 6504(e)(2) "authorizes nationwide service of process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (finding that identical language in 29 U.S.C. § 1132(e)(2) unquestionably authorizes nationwide service of process in ERISA cases). Because COPPA thus "provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Id.*

PJ Defendants do not disagree that § 6504(e)(2) authorizes nationwide service of process, but nonetheless argue that because the State did not allege this statutory basis for jurisdiction in the Complaint, the State may not invoke jurisdiction based on nationwide service of process and instead must rely on New Mexico's long-arm statute to establish jurisdiction over PJ Defendants. Doc. 72 at 6-7. In support of their argument, PJ Defendants cite only non-binding, out-of-district decisions, none of which stands for the proposition that the failure to allege nationwide service of process in a complaint forecloses a court from invoking jurisdiction on that basis. *See Telford v. Brown*, No. 05-cv-460, 2006 WL 8446105 (D. Idaho Apr. 7, 2006) (finding that RICO statute did not provide court with personal jurisdiction over non-resident defendants because plaintiff did not allege facts sufficient to find that the requirements for nationwide service under that particular statute were met, namely that the court had personal jurisdiction over at least one of the participants in the conspiracy and that there was no other district in which a court would have personal jurisdiction over all of the alleged co-conspirators); *Aurora Bank, FSB v. Seattle Bank*,

5

No. 13-cv-725, 2013 WL 5716515 (D. Colo. Oct. 21, 2013) (finding that court need not consider whether there was general, as opposed to specific, jurisdiction because plaintiff had not alleged that defendant had continuous and systematic contacts with Colorado); *Karsten v. Davis*, No. 12-cv-2107, 2013 WL 2120632 (D. Colo. May 15, 2013) (finding that because plaintiff did not allege continuous and systematic general business contacts with Colorado, exercise of general personal jurisdiction would be improper).

Indeed, PJ Defendants' argument is inconsistent with Tenth Circuit law. As noted above, on a motion to dismiss for lack of jurisdiction, the "rules of review" require determining whether plaintiff "make[s] a prima facie showing of personal jurisdiction," and "the test for personal jurisdiction to which these rules of review apply" involves two questions, namely, whether "any applicable statute authorizes the service of process on defendants," and if so, "whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Dudnikov*, 514 F.3d at 1070. It is only "[i]n the absence of federal authorization for nationwide service" that the court "turn[s] to state law." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1233 (10th Cir. 2006). Thus, it is of no consequence that the Complaint fails to assert nationwide service of process as a basis for jurisdiction, so long as the State's allegations make a prima facie showing that the two prongs of the relevant test for jurisdiction are met. *See Pryor v. Met. Life Ins. Co.*, No. 14-cv-701, 2014 WL 12593994, at *2 (D.N.M. Oct. 21, 2014) (applying two-step nationwide service of process test to determine jurisdiction over defendant in ERISA case, despite fact that both parties argued that New Mexico's long-arm statute and minimum contacts analysis controlled the issue). Because COPPA provides for nationwide service of process, the Court does not turn to New Mexico's long-arm statute, as PJ Defendants urge, but rather must continue to the second question of the personal jurisdiction test, namely whether the exercise of

jurisdiction over PJ Defendants "comports with constitutional due process demands." *Dudnikov*, 514 F.3d at 1070.

PJ Defendants also argue that because the State fails to adequately state a COPPA claim, COPPA's nationwide service of process provision cannot provide a basis for jurisdiction. Doc. 72 at 7. PJ Defendants point to their motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Doc. 47, and urge the Court to rule on that motion in their favor before continuing with its personal jurisdiction analysis. Again, PJ Defendants support this argument only with non-binding, out-of-district cases. *See Shell v. Am. Family Rights Ass'n*, No. 09-cv-309, 2010 WL 1348548 (D. Colo. Mar. 31, 2010) (determining first whether plaintiff sufficiently stated a RICO claim before addressing whether nationwide jurisdiction was proper); *Freedom Med., Inc. v. Gillespie, III*, 634 F. Supp. 2d 490 (E.D. Pa. 2007) ("Having found . . . that Freedom Medical has stated a claim against Bhatia under RICO, the Court finds that Freedom Medical has made out a prima facie case for jurisdiction over Bhatia in this Court.").

The Court instead finds persuasive *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997), a decision upon which the Tenth Circuit relied extensively in *Peay*, its seminal case on nationwide service of process jurisdiction. In *Republic of Panama*, the defendants argued, much as do PJ Defendants here, that the Court "need not decide whether the Fifth Amendment Due Process Clause limit[ed] the reach of RICO's nationwide service of process provision because, having failed to state a claim under RICO, Panama should not be allowed to utilize that statute's nationwide service of process provision to establish jurisdiction over them." 119 F.3d at 941. Because the defendants failed to make that argument before the district court, the Eleventh Circuit "consider[ed] this claim only to clarify the distinction between what a plaintiff asserting jurisdiction under a federal statute must allege

7

to survive a defendant's 12(b)(1) or 12(b)(2) motion on the one hand, and a defendant's 12(b)(6) motion on the other." *Id.* The Court explained that, "[w]hen a jurisdictional motion depends, as in this case, on the assertion of a right created by a federal statute, the court should dismiss for lack of jurisdiction only if the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy." *Id.* (citation omitted). Thus, the Court concluded that, "insofar as an asserted federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision." *Id.* at 942; *see also IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993) (where plaintiffs asserted a colorable claim under a federal statute, they were entitled to take advantage of that statute's nationwide service of process provision, and the court thus proceeded to decide that it had personal jurisdiction over defendants under the statute's nationwide service of process provision before addressing defendants' motion to dismiss for failure to state a claim under that statute).

The Court adopts the same approach here. PJ Defendants' argument fails to recognize the distinction between what the State must allege to survive PJ Defendants' instant 12(b)(2) motion, on the one hand, and their separately filed 12(b)(6) motion, on the other. As a result, PJ Defendants have failed to argue, much less establish, that the State's COPPA claim is "wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 942. In the absence of such an argument or showing, the State is entitled to take advantage of COPPA's nationwide service of process provision, and this Court will proceed to decide whether it has personal jurisdiction over PJ Defendants under COPPA before addressing PJ Defendant's separately filed motion to dismiss for failure to state a claim.

*The Due Process Inquiry*

As noted above, "provided that due process is satisfied, [Section 6504(e)(2)] confers jurisdiction over [PJ Defendants] by authorizing service of process on them." *Peay*, 205 F.3d at 1210. The Tenth Circuit has held that, "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum be fair and reasonable to the defendant. In other words, the Fifth Amendment 'protects individual litigants against the burdens of litigation in an unduly inconvenient forum.'" *Id.* at 1212 (quoting *Republic of Panama,* 119 F.3d at 945).

The burden is on the defendant "[t]o establish that jurisdiction does not comport with Fifth Amendment due process principles," first by demonstrating "that his [or her] liberty interests actually have been infringed." *Peay*, 205 F.3d at 1212 (citation omitted). Specifically, the defendant must "show that the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that he [or she] unfairly is at a severe disadvantage in comparison to his [or her] opponent." *Id.* (citation omitted). The court is directed to consider certain factors "in evaluating whether the defendant has met his or her burden "of establishing constitutionally significant inconvenience." *Id.* Those factors are:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his [or her] residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of the impact that the defendant's activities have beyond the borders of his state of residence or business.

*Id.*

The Tenth Circuit has "emphasize[d] that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 1212-13 (quoting *Republic of Panama*, 119 F.3d at 947). In particular, the Tenth Circuit noted that "in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay*, 205 F.3d at 1213 (quoting *Republic of Panama*, 119 F.3d at 947-48).

If a defendant is successful in demonstrating that "litigation in the plaintiff's chosen forum is unduly inconvenient, then 'jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant.'" *Peay*, 205 F.3d at 1213 (quoting *Republic of Panama*, 119 F.3d at 948). The Tenth Circuit explained that,

> [t]o determine whether infringement on the defendant's liberty is justified sufficiently by government interests, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

*Peay*, 205 F.3d at 1213 (quoting *Republic of Panama*, 119 F.3d at 948).

Accordingly, the Court first must consider each of the *Peay* factors to determine whether PJ Defendants have met their burden of establishing that this Court's exercise of jurisdiction would cause them "constitutionally significant inconvenience." *Id.* at 1212. Only if PJ Defendants have met this burden will the Court consider whether the federal interest in litigating this case in this Court outweighs the inconvenience to PJ Defendants. *Id.* at 1213.

*Application of the Peay Factors to the Instant Case*

As to the first factor, the extent of PJ Defendants' contacts with New Mexico, the Complaint alleges that PJ Defendants' SDKs are installed as app components onto children's

10

devices in New Mexico and, so installed on those devices, collect and send data about those children to PJ Defendants' respective servers, continuing to communicate with the servers as the children play on their devices in New Mexico, all the while transmitting the personal information of New Mexico children to their servers in order to request advertisements targeted to those children. Rather than address these allegations, PJ Defendants argue that the first *Peay* factor incorporates the test to determine whether, under the New Mexico long-arm statute, a court has specific jurisdiction over a defendant based on its purposeful direction of conduct into New Mexico, and that because they do not have the requisite minimum contacts under that test, the first *Peay* factor demonstrates "constitutionally significant inconvenience." Doc. 72 at 9. In *Klein*, however, the Tenth Circuit soundly rejected this very argument, holding that the Court "appl[ies] a different standard in a federal question case where jurisdiction is invoked based on nationwide service of process." 786 F.3d at 1318 (citation omitted). PJ Defendants' insistence that their contacts with New Mexico are insufficient to meet a minimum contacts analysis under New Mexico's long-arm statute is of no consequence.

PJ Defendants "shoulder[] the burden of showing constitutionally significant inconvenience created from defending the [COPPA] claims in [New Mexico]." *Id.* at 1319. Although they assert that they "have no connection with New Mexico," Doc. 72 at 9, PJ Defendants do nothing to refute the allegations regarding their collection of the personal data of children in New Mexico, their transmission of that data from the children's apps in New Mexico to their servers, and their request for transmission of targeted advertising to those children in New Mexico. These unrefuted allegations "demonstrate[] at least minimal contacts with the State." *Pryor*, 2014 WL 12593994, at *4. PJ Defendants thus fail to shoulder their burden as to the first *Peay* factor. *See id.* (finding that while defendant's contacts with New Mexico were

11

limited, they existed "to some degree and the remaining factors [would] decide the question of personal jurisdiction.").

With regard to the second factor, the inconvenience to PJ Defendants of having to defend in a jurisdiction other than their place of business, PJ Defendants argue that allowing litigation to proceed in this Court "would have cumulative effects on Defendants, as they could be sued anywhere a user downloads an app that incorporates their SDK." Doc. 72 at 11. Admittedly, this argument demonstrates that PJ Defendants may be inconvenienced by defending this action in New Mexico. It does not, however, equally demonstrate "that this burden rises to the level of constitutional concern." *Peay*, 205 F.3d at 1213. As were the defendants in *Peay*, PJ Defendants are "large corporations" that "surely have the resources to access counsel in [New Mexico]," or indeed, anywhere else in the United States where a user downloads an app that incorporates their SDK. *Id.* And as the Court found in *Peay*, "while [New Mexico] may be some distance" from PJ Defendants' headquarters in California, "modern methods of communication and transportation greatly reduce the significance of this physical burden." *Id.*; *see also Pryor*, 2014 WL 12593994, at *4 (finding that the distance between defendant's place of business in Austin, Texas to New Mexico, though "inconvenient for traveling, . . . in this modern day of instant communication, does not carry much prejudice" toward defendant).

With regard to the third factor, judicial economy, PJ Defendants argue that because "Defendants have all challenged the substance of the Complaint, and it is not clear that this case will proceed against any individual defendant," and because "it has not been shown at this early stage that judicial economy or fairness favors omnibus proceedings, . . . judicial economy will not necessarily be furthered by litigating claims against Defendants in New Mexico rather than in their home for[a]." Doc. 72 at 11. PJ Defendants, however, have pointed to "[n]othing in the

record [that] indicates that New Mexico is an unfair forum as far as judicial economy is concerned." *Pryor*, 2014 WL 12593994, at *4; *see also Peay*, 205 F.3d at 1213. While PJ Defendants argue that the State's allegations against them should be dismissed for failure to state a claim, "that issue is not before the Court" on the instant motion. *Pryor*, 2014 WL 12593994, at *4. Rather, "the only issue now before the Court is whether litigation in New Mexico is unconstitutionally inconvenient" to PJ Defendants. *Id.* PJ Defendants have "not demonstrated that judicial economy weighs against the exercise of personal jurisdiction." *Id.*

With regard to the fourth factor, the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of PJ Defendants' place of business, PJ Defendants argue that because "the bulk of the discovery will occur in various geographic locations outside of New Mexico where Defendants reside and operate their businesses," this factor "does not support proceeding in New Mexico." Doc. 72 at 10. But again, PJ Defendants have made no effort to demonstrate that "the probable location of discovery in this case make[s] [New Mexico] an unfair forum," and thus fail to satisfy their burden as to this factor. *Peay*, 205 F.3d at 1213.

Finally, with regard to the fifth factor, the nature of the regulated activity in question and the extent of the impact that PJ Defendants' activities have beyond the borders of their state of business, PJ Defendants argue because they are "third parties that make SDKs available to mobile app publishers," subjecting them to jurisdiction "wherever a user downloads an app with the SDK incorporated . . . would eviscerate due process." Doc. 72 at 10. This argument turns the fifth *Peay* factor on its head. It is the very fact that PJ Defendants' activities reach, as they admit, to "all 50 states," *id.*, and thus "unquestionably have a significant impact beyond the borders of [California]," that this factor militates in favor of the exercise of jurisdiction over

them. *Peay*, 205 F.3d at 1213. "Indeed, as this case demonstrates, [PJ Defendants'] activities reach far beyond [California]." *Id.* "[T]he federal policies behind [COPPA] and its nationwide service of process are best advanced by exercising personal jurisdiction over [PJ Defendants] in this case." *Pryor*, 2014 WL 12593994, at *4.

*The Court Will Exercise Personal Jurisdiction*

Based on its application of the *Peay* factors, the Court finds that PJ Defendants "have not met their burden of demonstrating that [this Court's] assertion of jurisdiction will make litigation so difficult and inconvenient that they unfairly will be at a severe disadvantage compared to [the State]." *Peay*, 205 F.3d at 1214. Accordingly, this is not a "highly unusual" case where inconvenience rises "to a level of constitutional concern," such that the Court's exercise of personal jurisdiction would be inappropriate. *Id.* And because PJ Defendants have failed to show that this Court's "assertion of jurisdiction will infringe upon their liberty interests," the Court need not consider whether the federal interest in litigating this case in this Court outweighs the inconvenience to PJ Defendants. *Id.* In the absence of any indication that PJ Defendants "lack[] the wherewithal to defend [themselves] here," their Motions to Dismiss for Lack of Jurisdiction will be denied. *Pryor*, 2014 WL 12593994, at *4.

## **CONCLUSION**

COPPA authorizes service of process on PJ Defendants, and thus becomes the statutory basis for personal jurisdiction here. Under the relevant factors, the exercise of such statutory jurisdiction comports with constitutional due process demands. Accordingly, it is appropriate for this Court to exercise jurisdiction over PJ Defendants.

**IT IS THEREFORE ORDERED** that Defendant Twitter and Mopub's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 46],

Defendant Applovin's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 48], and Defendant Inmobi and Aerserv's Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. 49] are **DENIED.**

DATED this 24th day of March, 2020.

_____
MARTHA VÁZQUEZ
United States District Judge