UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *EX REL.*
HECTOR BALDERAS, ATTORNEY
GENERAL,

      Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　No. 18-854 MV/JFR

TINY LAB PRODUCTIONS; TWITTER
INC.; MOPUB, INC.; GOOGLE, INC.;
ADMOB, INC.; AERSERV LLC;
INMOBI PTE LTD.; APPLOVIN
CORPORATION; and
IRONSOURCE USA, INC.

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Google's[1] Motion for Reconsideration or, in the Alternative, Interlocutory Appellate Review and Stay ("Motion for Reconsideration") [Doc. 93].　　The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion for Reconsideration is well-taken in part and will be granted in part and denied in part.

### BACKGROUND

I.　　Introduction

A federal statute known as the Children's Online Privacy Protection Act ("COPPA") prohibits app developers and ad networks from collecting certain personal information from app

---

[1] "Defendant Google" is Google LLC and AdMob Google Inc.

1

users who are children without first taking certain precautions. In a Memorandum Opinion and Order entered on April 29, 2020 ("April 2020 Opinion), this Court addressed what appeared to be an issue of first impression, namely, under what circumstances ad networks may be held liable under COPPA for their collection of personal information from app users who are children, in addition to how issues of preemption and state law come into play. Google now moves for reconsideration of the April 2020 Opinion, arguing that while the Court correctly held that ad networks cannot be held liable if they do not have "actual knowledge" that the app in which their software is embedded was not "directed to children," the Court incorrectly held that the additional issue of whether children were the "primary target audience" of the app was not relevant to the "actual knowledge" determination. According to Google, because the April 2020 Opinion, as it applied to Google, turned on the Court's legal error, that Opinion must be reconsidered and, upon reconsideration, its outcome altered.

II.     Facts

Tiny Lab Productions ("Tiny Lab"), a Lithuanian company, is a developer of child-directed, mobile game apps including Fun Kid Racing, Candy Land Racing, Baby Toilet Race: Cleanup Fun, and GummyBear and Friends Speed Racing. Doc. 1 ¶ 3. AdMob, Twitter/MoPub, InMobi/AerServ, Applovin, and ironSource (collectively, the "Ad Networks") sold their proprietary software development kits ("SDKs") to Tiny Lab for installation and use in its gaming apps. *Id.* ¶ 13. When a Tiny Lab app is downloaded onto a child's device in New Mexico, the Ad Networks' SDKs are also installed as app components. *Id.* ¶ 5. Once so embedded, while a child in New Mexico plays one of the apps, the Ad Networks' SDK collects personal information about that child and tracks the child's online behavior to profile the child for targeted advertising. *Id.* ¶¶ 43-46. This activity is invisible to the child and her parents,

who simply see the given app's game interface, and occurs "without (1) reasonable and meaningful notice to parents, or (2) verifiable parental consent."   *Id.* ¶¶ 46, 55, 66, 74.

Google runs not only AdMob, its ad network, but also Google Play, a "service" that allows a user to "browse, locate, view, stream, or download Content for [his or her] mobile, computer, tv, watch, or other supported device."   Doc. 50-4.   Google Play has a program called "Designed for Families," "which allows [app] developers to designate their apps and games as family-friendly."   Doc. 67-2.   Google markets AdMob for use in conjunction with apps that participate in the Designed for Families program.   Doc. 50-6.

App "developers can opt [] their app or game [into the Designed for Families program] through the Google Play Developer Console."   Doc. 67-2.   Google represents that, once developers opt into the Designed for Families program, "[f]rom there, our [Google's] team will review the submission to verify that it meets the Designed for Families program requirements." *Id.*   Those program requirements include that all participating apps "be relevant for children under the age of 13."   Doc. 67-3.   Google similarly represents that to participate in the Designed for Families program, there are "specific guidelines and policies" that the developers' apps "need to meet, which are assessed in the app content review."   *Id.*

The Complaint alleges that "the majority" of Tiny Lab's apps were submitted to and accepted by Google for its Designed for Families Program, where the apps were available for download.   The Complaint describes Tiny Lab's apps as "fun, free, kid-focused games" with a "cartoonish design and subject matter," with "levels [] designed specifically for children" – "toddlers," in particular.   *Id.* ¶¶ 100, 30-31, 119.   The games are "for kids," will keep them "entertained for months," and "are expressly to be played by [] children."   *Id*.   For example, one of Tiny Lab's apps, called "Fun Kid Racing," gives players "an assortment of cartoonish

3

cars" to race along to a "child-friendly soundtrack," and is designed for children aged 2 through 10, with "levels" and "controls" that "even a toddler" can use "without any problem."  *Id.* ¶ 31.

In the spring of 2018, security researchers at the University of California, Berkeley, notified Google that 84 Tiny Lab apps participating in the Designed for Families program were "potentially incorrectly listed as directed to 'mixed audiences'" rather than being listed, as they should have been, as "primarily directed to children," thereby causing app users under 13 years of age to be subjected to "COPPA-prohibited behavioral advertising."  *Id.* ¶ 114.  In response, Google conducted "a thorough investigation of each of the apps that [the researchers] highlighted in [their] research paper."  *Id.* ¶ 118.  Google "did not come to the same conclusion that any of these 84 Tiny Lab Productions apps were violating COPPA," and advised the researchers that it did not consider "these apps to be designed primarily for children, but for families in general."  *Id.* ¶ 47.

III.     Procedural History

The State of New Mexico ("Plaintiff") commenced this action, asserting a federal statutory claim against Tiny Lab and the Ad Networks for violation of COPPA, along with a state statutory claim against Tiny Lab and the Ad Networks for violations of the New Mexico Unfair Practices Act ("UPA"), a state common law claim against Tiny Lab and the Ad Networks for intrusion on seclusion, and a state statutory claim against Google for an additional violation of the UPA in connection with its operation of Google Play.  *Id.* ¶¶ 207-248.

Thereafter, all the Ad Networks other than AdMob (collectively, the "SDK Defendants") together filed one motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in which Google joined.   Additionally, Google filed its own motion to dismiss. The State objected to both motions.

In the April 2020 Opinion, the Court granted the SDK Defendants' motion in its entirety but denied Google's motion in part.  As to Plaintiff's COPPA claim, the Court explained that ad networks may be held liable under COPPA for the collection of personal information from child app users only if they have "actual knowledge" that the apps in which their SDKs are embedded are directed to children.  The Court found that the Complaint does not plausibly allege actual knowledge on the part of the Ad Networks by virtue of the communications between their SDKs and their servers but does plead additional factual content that allows the Court to draw the reasonable inference that Google had actual knowledge of the child-directed nature of Tiny Lab's apps.  The Court thus dismissed Plaintiff's COPPA claim as to the SDK Defendants but not as to Google.  Next, the Court found that because Plaintiff's COPPA claim against the SDK Defendants fails, Plaintiff's state law claims against the SDK Defendants are preempted.  While not preempted, the Court dismissed Plaintiff's UPA claims as to Google for failure to allege essential elements of a UPA claim, but did not dismiss Plaintiff's state law intrusion on seclusion claim as to Google, finding that the Complaint adequately alleges the elements of that claim.

On the instant Motion for Reconsideration, Google argues that the Court made a "clear legal error" in finding that the allegations in the Complaint plausibly allege actual knowledge on the part of Google.  Doc. 93 at 1.  Google further argues that, because the Court's refusal to dismiss Plaintiff's COPPA claim and intrusion of seclusion claim against Google "turned" on this error, the Court should reconsider its decision or, in the alternative, certify the legal question of what constitutes "actual knowledge" for interlocutory review by the Tenth Circuit.  *Id.*  at 2-3.  Plaintiff objects to either remedy.  Doc. 100.

**DISCUSSION**

I.    <u>Reconsideration of the April 2020 Opinion</u>

    A.    <u>Standard</u>

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. *In re Thornburg Mortgage, Inc. Secs. Litig.*, No. 07-85, 2011 WL 2429189, \*19 (D.N.M. June 2, 2011). When a party seeks to obtain reconsideration of a non-final order, the motion is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*, 983 F.2d 1120, 1122 n.1 (10th Cir. 1991). Although a district court has "considerable discretion" to revisit its prior decisions, *see Thornburg Mortgage*, 2011 WL 2429189 at \*19, "as a rule [the court] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted).

Tenth Circuit case law is clear that a motion for reconsideration is an "inappropriate vehicle [ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Fye v. Okla.*, 516 F.3d 1217, 1224 (10th Cir. 2011) (finding district court did not abuse its discretion in denying motion for reconsideration on basis that "considerations of fairness and judicial economy outweigh[ed] the Plaintiffs' interest in getting a second (or third) bite at the summary judgment apple"); *Otero v. Nat'l Distrib. Co., Inc.*, 627 F. Supp. 2d 1232, 1237 (D.N.M. 2009) (motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under

new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple"). Rather, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

B. Instant Case

COPPA, codified at 15 U.S.C. § 6501, et seq., "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet." 16 C.F.R. § 312.1. Specifically, COPPA makes it "unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the [relevant] regulations " (collectively codified as the "COPPA Rule") prescribed by the Federal Trade Commission (the "Commission"). 15 U.S.C. § 6502(a)(1). In turn, the COPPA Rule provides in relevant part that, subject to certain exceptions, an operator must provide notice and "[o]btain verifiable parental consent prior to any collection, use, and/or disclosure of personal information from children." 16 C.F.R. §§ 312.3(b), 312.4(a).

The COPPA Rule makes clear that ad networks may be held liable for the collection of personal information from child app users only if they have "actual knowledge" that the apps in which their SDKs are embedded are "directed to children." 16 C.F.R. § 312.2. An app is deemed "directed to children" if it "is targeted to children." *Id.* In turn, to determine whether an app is "directed" or "targeted" to children, various criteria are considered, namely:

7

> its subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

*Id.* Additionally, "competent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience" may be considered. *Id.*

There is a provision in the COPPA Rule, however, that states that, even if an app meets these criteria, it will not be deemed "directed to children" if it: (1) "does not target children *as its primary audience*"; (2) "[d]oes not collected personal information from any visitor prior to collecting age information"; and (3) "[p]revents the collection, use, or disclosure of personal information from visitors who identify themselves as under age 13 without first complying with the notice and parental consent provisions" of the COPPA Rule. *Id.* (emphasis added). On the instant motion for reconsideration, Google argues that the Court misapprehended the significance of this provision, which it calls the "mixed-audience exception." Doc. 93 at 4. According to Google, the proper interpretation of the mixed-audience exception inexorably leads to the conclusion that Google lacked actual knowledge as required by COPPA, and thus that reconsideration of the April 2020 Decision is necessary to avoid manifest injustice. *Id.* at 7. The Court agrees that its original analysis incorrectly discounted the relevance of the mixed-audience exception to the actual knowledge determination. The Court does not equally agree, however, that, reconsideration of the issue under the correct legal standard results in dismissal of the Complaint against Google.

While the mixed-audience exception forms the entire basis for its 20-page motion for reconsideration, in its original motion to dismiss, Google devoted only two paragraphs to this provision of the COPPA Rule. Specifically, in its original motion, Google cited this provision

8

(without specifically identifying it as the "mixed audience exception"), arguing that it makes "even more true" the seemingly discrete (and uncontested) point that "it is the app developer – and not the third-party advertising service – that bears 'strict liability' for COPPA compliance." Doc. 50 at 16-17.   After citing the mixed-audience exception, Google's next paragraph argued, without explaining why, that "the only possible basis for liability . . . would be an allegation that Google had 'actual knowledge' that the Tiny Lab Apps were 'primarily' directed to children, rather than directed to a mixed audience of children, teen, and/or adults."   Doc. 50 at 18. Google's argument continued, "there is no allegation that Google collected or used information in violation of COPPA from apps that were declared by Tiny Lab to be primarily child-directed or that Google determined should be treated as primarily child-directed."   *Id.*

Ultimately, the Court did not agree with Google's reading of the mixed-audience exception or its effect on the actual knowledge inquiry.   The Court explained:

> Nothing in the statute, the COPPA Rule, or the Commission's commentary suggests that this "age gate" provision alters the test plainly set forth in the COPPA Rule as to when an ad network such as Google will be deemed directed to children.   Nor does this provision, or any other provision of the COPPA rule, impose liability on an ad network only where that ad network collected information in the face of a "declaration" by the app developer or a determination by the advertising network that the app was "primarily child-directed."

Doc. 87 at 19-20.   Accordingly, the Court concluded that "Plaintiff's allegations regarding Google's actual knowledge that Tiny Lab's apps were directed to children are sufficient to survive the instant motion to dismiss without additional allegations addressing the distinction between apps 'primarily directed to children' and those 'directed to a mixed audience of children, teen, and/or adults,' a distinction that is not relevant here."   *Id.* at 20.

Reading the COPPA Rule again with the benefit of Google's more fully developed analysis, the Court agrees that the distinction between apps that target children as their primary

audience and those that do not is, in fact, relevant to the actual knowledge inquiry. The mixed-audience exception makes clear that where an app does not target children as its primary audience, so long as it screens its users for age and does not collect personal information from users who identify themselves as under 13 without complying with certain notice and consent requirements, the app will not be deemed directed to children. 16 C.F.R. § 312.2. And if an app is not deemed directed to children, it follows that an ad network that collects information from users of that (non-child-directed) app could not be found to have "actual knowledge" that the app is directed to children. Indeed, it would be nonsensical to decline to extend the mixed-audience exception to ad networks, as to hold otherwise would expose ad networks to liability for COPPA violations where app developers themselves, in the first instance, would be absolved from such liability. For example, if the mixed-audience exception were not considered here as to Google, Tiny Lab could avoid COPPA liability by proving that it satisfied the screening, notice, and consent requirements of the mixed-audience exception, but Google would still be potentially liable for failing to treat every Tiny Lab app user as if they were under the age of 13.

The official Statement of Basis and Purpose published by the Commission with the amended COPPA Rule confirms that the Commission intended to set a different standard for apps that target children under 13 as the primary audience and those that "target children only as a secondary audience or to a lesser degree." Federal Trade Commission, Children's Online Privacy Protection Rue, Final Rule Amendments and Statement of Basis and Purpose, 78 Fed. Reg. 3972, 3984 (Jan. 17, 2013). For the latter category only, "a site or service . . . may use an age screen in order to apply all of COPPA's protections only to visitors who self-identify as under age 13," and "at that point, the operator will be deemed to have actual knowledge that such users are under 13 and must obtain appropriate parental consent before collecting any personal

information from them." *Id.* The Commission declined to adopt this same standard "for all child-directed sites," instead "retain[ing] its longstanding position that child-directed sites or services whose primary target audience is children must continue to presume all users are children and to provide COPPA protections accordingly." *Id.* Thus, if an app is targeted to children only as "a secondary audience or to a lesser degree" rather than as the "primary audience," neither an app developer nor an ad network will be deemed to have "actual knowledge" that the app's users are children unless, in response to age-screening questions, those users self-identify as under 13.

That the Court agrees with Google as to the significance of the mixed-audience exception, however, is not the end of the inquiry. The question remains as to whether, giving the mixed-audience exception its proper significance, Plaintiff has adequately alleged actual knowledge on the part of Google. Google answers this question in the negative, because the Complaint neither alleges that Google had actual knowledge that Tiny Lab's apps were "primarily child-directed," nor alternatively alleges that Tiny Lab's apps were directed to a "mixed-audience" but failed to meet the mixed-audience notice and consent requirements. Doc. 93 at 11-12. The Court agrees that Plaintiff does not allege, or even attempt to allege, that Tiny Lab's apps were intended for a mixed audience but failed to meet the requirements for such an audience. The Court does not equally agree, however, that Plaintiff's failure to use the precise words "primarily child-directed" when describing Tiny Lab's apps means that Plaintiff has failed to allege actual knowledge on behalf of Google, as Rule 12(b)(6) does not demand such a precise pleading standard.

At this stage of the case, the Court must determine whether the Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, the Court is directed to distinguish between "factual content" and "legal conclusions" when determining the sufficiency of a complaint, as it is only "well-pleaded" facts that can "nudge" a party's claims "across the line from conceivable to plausible." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Accordingly, what matters here is whether the factual content of the Complaint allows the Court to draw the reasonable inference that Google had actual knowledge that Tiny Lab's apps "target[ed] children as [their] primary audience." 16 C.F.R. § 312.2. The Court finds that it does.

As noted above, the COPPA Rule identifies specific criteria to consider in determining whether an app is "directed to children," namely:

> its subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

*Id*. The COPPA Rule does not similarly identify factors to consider in determining whether an app that meets these criteria is also directed to children "as its primary audience." Webster's Dictionary, however, defines "primary" as, *inter alia*, "of first rank, importance, or value: PRINCIPAL." Merriam-Webster's Collegiate Dictionary 986 (11th Ed. 2020).

Here, the Complaint contains detailed factual allegations regarding the nature of Tiny Lab's apps, describing them as "fun, free, kid-focused games" with a "cartoonish design and subject matter," with "levels [] designed specifically for children" – "toddlers," in particular. *Id.* ¶¶ 100, 30-31, 119. The Complaint further states that the games are "for kids," will keep

12

them "entertained for months," and "are expressly to be played by [] children."  *Id*.  The Complaint includes, as an example, a Tiny Lab app called "Fun Kid Racing," which gives players "an assortment of cartoonish cars" to race along to a "child-friendly soundtrack," and is designed for children aged 2 through 10, with "levels" and "controls" that "even a toddler" can use "without any problem."  *Id.* ¶ 31.  The allegations thus (1) detail the subject matter, visual content, use of animated characters, and child-oriented activities of Tiny Lab's apps, factors establishing that the apps were directed to children, and (2) indicate that the apps were specifically designed and expressly intended for young children (ages 2 through 10, toddlers), establishing that the apps were directed to children as their first, principal, or "primary" audience.  Accordingly, the Court finds the factual content of the Complaint sufficient to create the reasonable inference that Tiny Lab's apps are not only "directed to children" but also that their "primary audience" is children.  16 C.F.R. § 312.2.

Next, the Complaint alleges that Google reviews the content of apps submitted to its Designed for Families program with a particular eye toward whether the apps are relevant for children.  The Complaint further alleges that Tiny Lab's apps, replete with characteristics revealing their content, were submitted to, and accepted by, Google into that program.  Finally, the Complaint alleges that, after being contacted by concerned researchers, Google reviewed the content of Tiny Lab's apps with the specific goal of determining whether they were "primarily directed to children."  The reasonable inference to be drawn from these facts is that Google conducted not one but two reviews of the content of Tiny Lab's apps, during which Google gained (not once but twice) a first-hand awareness or understanding – "actual knowledge" – of the nature of those apps.

Reading these allegations together, the factual content of the Complaint plausibly alleges

13

that, first through its review process in connection with the submission of Tiny Lab's apps to its Designed for Families program and again through its investigation of those apps to determine whether they were "primarily directed to children," Google obtained actual knowledge that Tiny Lab's apps are "child directed sites or services whose primary target audience is children." Federal Trade Commission, Children's Online Privacy Protection Rue, Final Rule Amendments and Statement of Basis and Purpose, 78 Fed. Reg. 3972, 3984 (Jan. 17, 2013). In the face of this factual content and the reasonable inferences that can be drawn therefrom, the Court declines to hold the absence of a "threadbare recital," *Iqbal*, 556 U.S. at 678, that Tiny Lab's apps were "primarily child-directed," Doc. 93 at 11-12, determinative of whether the Complaint adequately alleges actual knowledge on the part of Google and in turn, whether Plaintiff adequately states a COPPA claim.

Nor does the Court find availing Google's contention that its "back and forth" with the Berkeley security researchers "confirms that Google never had actual knowledge that the apps were *primarily* child-directed." Doc. 93 at 13 (emphasis in original). The allegations in the Complaint regarding these communications "confirm" only that Google represented to the researchers that it did not agree that the Tiny Lab apps were "designed primarily for children." Doc. 1 ¶ 114. That Google made this representation, however, does not negate the fact that the Complaint plausibly alleges that Google, through its review of Tiny Lab's apps, had actual knowledge that those apps were child directed sites or services whose primary target audience is children.

On a motion to dismiss, it is not the job of the Court to find facts, but rather to determine whether the Complaint is sufficient to state a claim. Accordingly, whether the facts ultimately will show that the Tiny Lab apps were designed for families in general, as Google represented, or

14

whether the apps were, in fact, designed primarily for children, is a question for another day. At this juncture, because the Court finds that Plaintiff has plausibly alleged that Google had actual knowledge that Tiny Lab's apps were child directed sites or services whose primary target audience is children, Plaintiff's COPPA claim is not subject to dismissal for failure to state a claim.

The Court thus agrees with Google that the April 2020 Opinion misapprehended the significance of the mixed-audience exception to the actual knowledge determination, and that this misapprehension warranted reconsideration of the Court's determination as to Google's actual knowledge for purposes of Plaintiff's COPPA claim. Having now reconsidered that determination, giving the mixed-audience exception its proper significance, the Court holds that Plaintiff has adequately alleged actual knowledge on the part of Google. It follows that there is no basis to dismiss Plaintiff's COPPA claim. And because Plaintiff's COPPA claim against Google survives, there is no basis to hold Plaintiff's intrusion on seclusion preempted.

II.     Interlocutory Review

On the instant motion, Google asks the Court, in the alternative to reconsideration, to certify for interlocutory review the question of "the proper interpretation of the COPPA Rule's mixed-audience exception and its application to ad networks like Google's AdMob service." Doc. 93 at 16. As discussed above, the Court has accepted Google's invitation to reconsider the April 2020 Opinion, and has specifically determined herein the proper interpretation of the COPPA rule's mixed-audience exception, thereby adopting Google's argument that this exception is integral to the actual knowledge element of COPPA as it applies to ad networks. Accordingly, there is no reason to grant Google's alternative request for interlocutory review.

15

III.    Stay

Google requests that the Court stay this action pending resolution of the outstanding issue if it "grants reconsideration or certification for interlocutory appeal." *Id.* at 19.    As the Court has now reconsidered the April 2020 Opinion and determined that Plaintiff's COPPA claim remains viable, there is no reason to stay this matter.

## CONCLUSION

For the foregoing reasons, the Court grants reconsideration of the April 2020 Opinion, but in reconsidering that opinion, declines to dismiss Plaintiff's COPPA claim against Google and, as a result, also declines to dismiss Plaintiff's intrusion on seclusion claim against Google. As the Court has granted reconsideration, it need not grant Google's alternative request for certification for interlocutory review.    As the Court has now reconsidered the April 2020 Opinion, there is no reason to stay this action.

**IT IS THEREFORE ORDERED** that Defendant Google's Motion for Reconsideration or, in the Alternative, Interlocutory Appellate Review and Stay [Doc. 93] is **GRANTED in part** and **DENIED in part** consistent with this Opinion.

DATED this 2nd day of February 2021.

_____
MARTHA VAZQUEZ
United States District Judge